Henry Perkinson, Plaintiff in Error, *v.* City of St. Louis, Defendant in Error.

### July 3, 1877.

Where a city charter provides that no improvement shall be ordered "except by ordinance which shall set apart a specific appropriation for the work ordered," a contractor cannot recover for work done under order of the city engineer, when he knew, or might have known, that the work was in excess of the appropriation therefor. Such charter provision was a fact of which the contractor was bound to take notice.

Error to St. Louis Circuit Court.

*Affirmed.*

Dailey & Adams, for plaintiff in error.

E. T. Farish, for defendant in error.

Bakewell, J., delivered the opinion of the court.

This is an action upon a special contract for grading and macadamizing Grand Avenue from Chouteau Avenue to the Gravois Road, in St. Louis. The petition alleges that on June 13, 1866, the plaintiff made an agreement in writing with the defendant, signed and sealed by plaintiff and subscribed by defendant, acting therein by and through Truman J. Horner, its city engineer, duly authorized for that purpose, whereby plaintiff agreed to grade and macadamize Grand Avenue from Chouteau Avenue to the Gravois Road, or so much thereof as may be ordered, strictly in accordance with the directions of the city engineer, and under his supervision and control, the work to be done in a certain specified manner, fully set out in the petition; that defendant, by said agreement, was to pay plaintiff 33 cents per cubic yard and $6.40 per square of 100 cubic feet for macadamizing, the grading to be paid for as the work progresses, at the discretion of the city engineer, by warrants of the city auditor drawn on the city treasury, payable out of the funds available for the improvement of streets and alleys, and the macadamizing to be paid for by special

tax bills against adjacent property; that the contract was approved by the city counsellor, and by the board of delegates and the board of aldermen, whereupon it became obligatory and binding upon the parties thereto; that afterwards, in 1866, plaintiff was ordered by defendant to proceed to do all the work embraced in the contract, and in pursuance of this order, and the contract, he began the work, and continued the same until stopped by defendant without any legal excuse or ground for stopping him; that at such time plaintiff had performed 290,047 cubic yards of grading, and that there was then remaining to be done of said grading, in order to the completion of the same, 145,000 cubic yards, and that there was then remaining to be done of said macadamizing, in order to the completion of the same, 3,000 squares; that at the prices stipulated plaintiff would have realized a large profit upon the said grading and macadamizing so remaining to be done, if the defendant had permitted him to do the same in pursuance of the agreement; that at the time of the refusal there were in the street and alley fund of defendant's treasury funds available for the grading work embraced in said agreement, and that there have since been sufficient funds in the fund of said treasury, available for said grading work, to have fully paid for their completion. Plaintiff says that defendant has paid him on account of said grading work the sum of $6,425, and there was due him on the —— day of ——, 18—, the balance of $3,150.17 on account of said grading work done as aforesaid; that said sum was on that day demanded of the defendant, but no part thereof has been paid. Plaintiff says that he has been damaged, by being prevented from performing his contract, in the sum of $10,250, for which and for said balance, with interest. thereon and costs of suit, he prays judgment.

Plaintiff, for another further cause of action, says that. from the —— day of ——, 186—, to the —— day of ——, 186—, he, at the instance and request of defendant, and

under the order and direction of its then city engineer, did 500 cubic yards of grading on ———, between the Pacific Railroad and Mill Creek sewer, which was reasonably worth the sum of 33 cents per cubic yard, whereby defendant became indebted to plaintiff in the sum of $165, for which, with interest and costs, he asks judgment.

Defendant demurred to the first count of the petition, on the ground that it improperly united a claim for a balance due on contract with a claim for damages for breach of contract. To the second count defendant demurred on the ground that it did not set forth facts sufficient to constitute a cause of action. The demurrer was overruled as to the first count, and sustained as to the second count.

The answer admits the making of the contract as alleged, and says that the contract contained these conditions, not set out in the petition :

"And it is hereby distinctly understood and agreed that the city engineer shall have the right to suspend this contract, or annul the same, whenever the appropriations made therefor by ordinance are either exhausted or unavailable.

"This contract is entered into subject to the provisions of the existing ordinances of the city, and to the express power of the city engineer to suspend or annul said contract for any failure on the part of the contractor to fulfil or comply with same. Should the work be suspended or annulled by the city engineer, it shall not entitle the contractor to any damages on account thereof."

The defendant also says that by ordinance No. 5740 the sum of $3,000 was appropriated for the work in question, and by ordinance No. 8825 the further sum of $3,500 was so appropriated, and that no other or further appropriations for the same have ever been made; that up to July 24, 1867, plaintiff had done grading under said contract amounting, at the rates stipulated in said contract, to the sum of $6,494.34, which exhausted the appropriation for said work, with the exception of $5.66, and that there was duly paid

to the plaintiff by defendant, at the time, $6,425, leaving a balance of $69.34 due plaintiff, which was duly tendered; that due notice that the fund was exhausted, and that the work was suspended for that reason, was given to plaintiff. The answer denies that there were funds for said work in the city treasury, except as stated in the answer, and says that there have been no funds since in the treasury for that purpose; and says that plaintiff was entitled to do only so much of said work as he was ordered to do, and that he was ordered to do no more work than that set out in the answer, and that when that was completed he was directed to stop, the contract annulled, and the work suspended. The new matter in the answer was put in issue by the reply.

On the trial the contract was introduced, and it contains the conditions set out in the petition and answer, and provides that "the city engineer, under the provisions of ordinances Nos. 5740 and 5825, and by virtue of authority in him vested by general ordinances of the city, did let unto the said Henry Perkinson the grading and macadamizing of Grand Avenue from Chouteau Avenue to Gravois Road, and that the said Perkinson agreed to do such work, or so much thereof as may be ordered, strictly in accordance with the directions of the city engineer, and under his supervision and control," etc.

Plaintiff introduced the following ordinances of the city: Nos. 5740 and 5825, approved January 27 and March 20, 1866, respectively, and which appropriate, together, the sum of $6,500 for the work in question, and authorize the city engineer to cause Grand Avenue to be graded from Chouteau Avenue to the Gravois Road, and a carriage-way of thirty feet to be macadamized; No. 6141, approved March 29, 1867, appropriating $1,500 for grading Grand Avenue from Lafayette to Pontiac, which is part of the work described in the contract; No. 7809, approved July 12, 1871, appropriating $1,500 for grading Grand Avenue

from Lafayette to Park Avenue, which is part of the contract work; No. 8593, approved July 16, 1873, for grading from Vista to Chouteau Avenue, part of the contract work; and ordinances Nos. 5839 and 6450, approved April 14, 1866, and March 16, 1868, which, amongst other things, appropriate $90,000 to grading streets and alleys.

There was evidence tending to show that, shortly after the contract was approved, the city engineer ordered plaintiff to proceed with the work under the contract; that plaintiff did so; that in October, 1866, the city engineer made a measurement of the work done to that time, which amounted to $6,494.34; and that no direction was then or afterwards given to continue the work; that plaintiff did continue the work until October 18, 1869, when the contract was cancelled by the city engineer, on due notice to plaintiff, " on account of conflicting funds and charters," and plaintiff directed to do no more work.

There was also evidence tending to show that plaintiff had done 290,047 cubic yards of grading, and that 145,000 cubic yards remained to complete the work; that the value of the work done, at contract prices, was $9,576.17; that he had been paid $6,425, and that a large profit would have been made on the remaining work, had plaintiff been allowed to proceed.

The cause was tried without a jury, and the court was asked by plaintiff to declare the law to be:

" 1. That the plaintiff, if ordered by the city engineer to do all the contract work, was entitled to do so, unless the appropriations were exhausted at the time alleged in the answer, and the work suspended or the contract annulled for that reason. And if such order was given, and the work not so suspended or the contract so annulled, plaintiff should recover the amount of grading done, at contract price, less the amount paid, and also net profits he would have realized on the work to be done, if at the commencement of the suit there had been funds in the city treasury

available to pay all the grading work done under the contract; and if there had not been such funds in the treasury, then plaintiff should recover the balance due him for the grading work done, or such proportion thereof as such funds would pay for at the contract price, and also such profits upon such proportion, if any, of such remaining grading work as the remainder of such said funds, if any, would pay for at the contract price.

" 2. Also that the appropriations made by ordinances Nos. 5740, 5825, 6141, 7809, and 8593 were all available for grading work embraced in the contract."

The court refused these instructions, and gave the following, at the instance of defendant:

" The court declares the law to be that, under the contract read in evidence and the Charter of the city of St. Louis in force when that contract was entered into, the liability of the city under said contract is measured by the appropriations made for the work called for therein by ordinances Nos. 5740 and 5825, read in evidence, and it being admitted by the pleadings herein that prior to the commencement of this suit the defendant had paid unto plaintiff $6,425 for work done by plaintiff under said contract, there can be no recovery herein, in any event, for an amount exceeding $75."

The court found for plaintiff in the sum of $75, and plaintiff brings the cause here by appeal.

The Charter in force at the date of this contract, and whilst the work was being done (Laws 1866, p. 283), being the City Charter of March 19, 1866, provides (art. 3, sec. 3) that "no money shall be expended out of an appropriation, except for the purposes specified in the ordinance making the appropriation; nor shall any improvement be ordered involving an expenditure of money, except by ordinance, which shall set apart a specific appropriation for the work ordered, based upon an estimate of cost, and no work shall be ordered or charged to any appropriations

that would cause the expenditures of any fiscal year to exceed the appropriations thereof."

If, then, the city engineer, at the time that plaintiff commenced this work, ordered him to do the whole work embraced in the contract; or if, at the time the measurements were taken, and it was found that work was done to the full amount provided for by the specific appropriation, he ordered the work further to proceed, he exceeded his authority. The Charter of the City of St. Louis was a public act, of which all persons interested were bound to take notice. Mr. Horner, as city engineer, had no more power to direct plaintiff to continue the work after the appropriations were exhausted than he had to direct him to build a new jail. Nor is there any evidence that he did so. There is no pretence that any new order was given after the measurement in October, 1866; and the work, by the provisions of the contract itself, was suspended at that date, it appearing that the appropriation was exhausted. A new appropriation was made for a portion of the work, by ordinance, in March, 1867; but there is no evidence that the city engineer directed that the work should be resumed, or that he knew that it was resumed; nor is there any thing to show that any part of the work sued for was done between Lafayette and Pontiac Avenues, for which part alone of the grading of Grand Avenue the ordinance of March, 1867, provides. The other ordinances were all passed after the city engineer had annulled the contract, and after plaintiff had abandoned the work.

Had the plaintiff shown that he had received orders to continue the work after the appropriation for grading a part of Grand Avenue had been made by the ordinance of March, 1867, it could have availed him nothing, because the contract recites that it was made under the provisions of ordinances numbered 5740 and 5825, which make appropriations for the entire work to be done under the contract. He was not to grade the whole of Grand Avenue

between the points named; but he was to do so much grading on Grand Avenue, between the points indicated, as could be done, at the contract price, for the sum appropriated by the two ordinances named, provided he received orders to that effect from the city engineer. He was to do so much as the engineer might order, and the engineer could not, under the Charter, order work involving an expenditure of money, except by ordinance; and no ordinance was in existence, at the time of the contract, directing any expenditure, except the two ordinances Nos. 5740 and 5825; and they are made part of the contract by reference, and the contract is said to be made by virtue of these ordinances, and subject to their provisions. A subsequent appropriation could not modify the existing contract.

The contract between the plaintiff and the city, in its terms, was this: that, of the grading of Grand Avenue, between the points named, he was to do so much as should be ordered, not to exceed in value, for grading, the sum named in the appropriations provided for in the ordinances referred to in the contract itself. The contract was not *ultra vires,* and was one which the city engineer had power to make; but if, under the orders of the city engineer, and professing to act under this contract, the plaintiff proceeded with the work after the measurements showed that the appropriation for the work was exhausted, he did so at his peril, because he had notice of the limits of the authority of the agent, and is supposed to have known that the engineer had no power to direct him to continue the grading when the specific fund provided for by the contract was exhausted.

We see no error in the record to the prejudice of plaintiff, and the judgment is affirmed. All the judges concur.